Accordingly, we'll start with the motion. Rivera versus Searls. Mr. Jackson, you're on the line. Yes, Your Honor. And Mr. Ingebretson, you're on the line. Yes, Your Honor. Mr. Jackson, you can proceed. Thank you, Your Honor. Daniel Jackson on behalf of the petitioner appellant, Mr. Roberto Carlos Terran Rivera, who we'll be referring to throughout as Mr. Terran. If it pleases the court, Mr. Terran is currently about a 40-minute drive from the Canadian border. He wants to immediately be allowed to leave the country, in essence and legal effect, to execute his deportation at no cost to the government and in compliance with his rights under the Safe Third Country Agreement, or SCCA. The government has both physically restrained him from entering Canada and intends to instead imminently deport him to Nicaragua, despite the fact that he has a pending refugee status claim in Canada. Now, these actions violate Mr. Terran's STCA rights and the government's corresponding express obligation in two ways. First, because Mr. Terran's wife is in Canada, he has an individual legal right to go there, as reiterated in the papers by the Canadian authorities and officers from the UN High Commission on... Mr. Jackson, this is Judge Chin. So, Canada sent him to the United States and there's a prohibition order in place that says he cannot return to Canada, right? Your Honour, that isn't entirely accurate. So, as made out or as shown in the papers, including the declaration of Kate Webster and the Neufeld Declaration as well, Mr. Terran, in fact, is not subject to the COVID protocols if he approaches a port of entry. So, that is a temporary prohibition for people other than Mr. Terran. Now, it was clearly issued in his case, but there is no prohibition on him going back to Canada. But importantly, the second way that the government's actions violate his individual STCA rights and the government's obligations are that under Article 3, Subsection 1 of the STCA, the United States is prohibited from returning to another country, a refugee status claimant, until the adjudication of that person's refugee status claim has been made. So, the U.S. government is both prohibiting him from, or preventing him from progressing that adjudicated process and intends to deport him to a third country before that adjudication has been made. Now, in addition, as we've made out in the motion, the government's actions- He could have sought review before an immigration judge and the BIA, and then eventually, in a petition for review to this court. Your Honor, not of the rights at bar. Now, if he had been denied access to the legal regime under the Immigration and Nationality Act, as the case that the government cited from the Fifth Circuit and NACU makes very clear, he could have challenged through the removal process and ultimately a petition for review, the denial of those INA rights. But that's specifically because under 1252, they took away rights that he would otherwise have under the INA. In this case, it appears to be a procedurally valid and lawfully issued removal order. He seeks vindication of an entirely separate right, and he could not have gone to an immigration judge and said, yes, these charges and this removal order appears facially valid, but please prevent the government from preventing my access to Canada or otherwise deporting me before my Canadian refugee status claim has been adjudicated. That's simply not- You have one minute. One minute. My apologies. If Your Honor have any further questions, I would leave it. No, I said you have one. I was saying you had one minute, so you can finish if you want. Oh. I'm just giving you a warning. Certainly, Your Honor. So as made clear in, for example, SNCB session from the Southern District of New York, the core point here is the claims at bar are not inextricably linked to the validity of his removal order. We don't say that it was improperly issued. We have no challenge that could be cognized by the petition for review process. This is to seek relief from, or release from unlawful restraint preventing him from accessing his legal rights under the SPCA. Thank you. We'll hear from the government. Thank you, Your Honor. Good morning and may it please the court. My name is Richard Ingebrigtsen for the government. This court should deny petitioner's motion to state his removal for two reasons. The first is that petitioner has failed to prove that he is likely to succeed on the merits of his claim. The district court correctly determined that it lacked jurisdiction to hear petitioner Kabe's claim challenging his final order of removal. The second reason is that even if this court concludes that it does have jurisdiction, it should still deny petitioner's motion because petitioner has not demonstrated by clear and convincing evidence that the execution of their removal order is prohibited by law as required by 1252 F2. Petitioner, the district court correctly determined that it lacked jurisdiction in this case, Your Honor. While petitioner have attempted to portray this case as a challenge to their detention, the district court correctly determined that detention in this instance was a factual predicate to the execution of a valid final order of removal and that the jurisdictional bars in 1252 prevented the court from hearing this claim. As this court held in Delgado v. Quarantio, the jurisdictional bars of 1252 applied to both direct and indirect challenges to a final order of removal. And in this instance, the relief petitioner seeks is an indirect challenge to their final order of removal to Nicaragua. And Mr. Ingobertson, this is Judge Lynch, excuse me. This may not be my business, I suppose, but I'm just wondering, what does the government have at stake here? Assume for the moment that the Canadians are willing to take him in. Why do we care? I mean, the point is he's deported from the United States, right? So if he is happy enough to go to Canada and the Canadians are happy enough to take him, what is the point here? Why are we fighting about this? Your Honor, putting aside the question of what is the point, the issue here is that there is a prior final order of removal, which is beyond the jurisdiction of the court. I'm not asking about the jurisdiction of the court. I'm asking why you care. Why does the United States government care? Assuming, I mean, there is some issue as to whether Canada will take him. If they won't, I suppose the whole thing is pointless on the other side. But if the Canadians will take him, why does it matter that, why can't we all just get along in effect? Well, Your Honor, there are several legal bars that would prevent the government from removing an individual to a contiguous country in this instance. Mr. Rivera is not a citizen of Canada and is not a citizen or resident of Canada. And as such, under the Immigration and Naturalization Act and various regulations governing where the government can remove an individual to, they're prohibited from executing his removal to Canada. This is under 1231B2B and 8 CFR 124012B. So the executive branch, it would be a wrongful act, an illegal act for government officials to escort him to the Canadian border and then let him go, to let him walk across the border. Again, assuming the Canadians want him. There's no such thing as any kind of executive discretion to release him under those circumstances. Well, the execution of removal orders is within the discretion of the government. In this instance, the government has decided to exercise its discretion. That's what I'm asking you about. Excuse me, Mr. Ingebrigtsen. I'm just trying to get some notion. And yeah, I guess you could tell me it's none of my damn business because it doesn't affect the case and you have private reasons of your own. The government has private reasons of its own that it chooses not to disclose. I'm just trying to understand why it is somehow, there's a case that is sitting here in front of us when you have a guy who has been ordered to leave the country, is happy to leave the country. And there is a country that arguably is willing to take him in to pursue an asylum claim that may be fruitless here, but Canadian law may be different. Is there anything you can tell me as to why we're having this fight? Your Honor, the government has chosen to exercise the final order of removal to Nicaragua. And that is the case here. And in this instance, that is what the case stands to. The United States has chosen- Is there any indication in the record whether Canada would take him? Your Honor- I thought that there was a prohibition order, but Mr. Jackson says it doesn't really apply. So is there anything as to whether Canada would take him? Your Honor, petitioners in their reply to the government's opposition to the motion to stay in this court did provide a letter indicating that Canada would be willing to accept him and that he would have rights. At the time of his detention, there was no such indication. The Canadians had returned Mr. Rivera and turned him away from the border, at which point he was apprehended by immigration authorities and his prior order of removal was reinstated. And the government is going to exercise that final order of removal to Nicaragua at the end of the discretionary 30-day stay that it granted in this case. Because the district court- You know, I know you were in mediation last week, but was there discussion about resolving the case by just turning him over to Canada in light of the apparent willingness of Canada to accept him? Your Honor, this was related- The government did consider, and this matter was discussed during mediation. Again, Your Honor, the government in this instance has decided in its discretion to execute the final order of removal to Nicaragua. And again, Your Honor, under 1252G, the district court, again, correctly determined the discretion as a matter to execute- I understand that, and you keep going back to that. But just in terms of resolving the matter, if indeed Canada is willing to take him, why wouldn't- This is really Judge Lynch's question again. I mean, is there something that explains why that isn't a good way to resolve the matter? Your Honor, in this instance, Your Honor, again, the government in this instance has decided to return to Nicaragua. And again, it was discussed in mediation, other alternatives, and whether the government would be willing to remove a petitioner to another country other than Nicaragua, or return him to Canada, the government has taken the position that the final order of removal will be executed and he will be returned. And I guess one last question that I often find myself asking assistants in criminal cases, at what level was this decided? I mean, this has gone to the United States Attorney, I take it. The U.S. Attorney for- Well, who- I'm sorry, Your Honor. How high up did this go in the Justice Department? It's not just you, I take it. There has been some discussion of this at some higher level than the individual lawyer working on the case, right? Yes, Your Honor. The agency has internally reviewed this question of, and it has internally reviewed this question, and again- The agency being DHS? Yes, Your Honor. Uh-huh. And again, they have chosen to, and specifically Immigration Customs Enforcement, they have chosen, again, in this instance, to execute the final order of removal to Nicaragua. And again, Your Honor, the question of who is making the decision necessarily is not impertinent to the discussion of whether the court has jurisdiction to review in this instance. It's not pertinent to, you mean? Yes, Your Honor. It has nothing to do with our jurisdiction. If you were Mr. Jackson, who is next up the line that he can appeal to? I mean, can he talk to the Attorney General? Can he talk to the Secretary of Homeland Security? Is there, can he write his congressman? I suppose that's another alternative, and I suspect that executive branch agencies might be responsive to the legislature if they're not responsive to judicial wonderment. Are those opportunities that he still has available? Your Honor, again, Your Honor, the proper mechanism for the petitioner to challenge his final order of removal was to move to reopen immigration proceedings and exhaust administrative remedies at that level. Well, what do you say to Mr. Jackson's argument that that's just wrong, that the immigration judge or the BIA would just bounce him out because it has authority to interpret and apply the immigration statutes and not the treaty that he's trying to invoke? Your Honor, I would note that it's still a challenge to the final order of removal and which country he is going to be removed to, which are mechanisms, which are things that can be challenged through the petition for review process. And that is- So if he made a petition for, is it now untimely for him to move to reopen? Your Honor, at this time, it should be untimely, or it should be untimely. I believe it would have been 30 days after the order of removal for him to challenge that. Right, so if he did that now, the government would oppose. But if he had done it in a timely way, the government would have done what? Opposed it on the merits, on the ground that the treaty doesn't apply or that it's not his, it's actually not in the authority of the immigration judge to apply? Your Honor, without seeing what the appeal would be, it would be speculating how- Well, you're saying it is not speculative. You are saying that he had a right and he waived it. But now you're saying you can't tell me whether he really did have a right, because maybe if he tried to invoke that right, the government would have decided to oppose it. And it's speculative to ask what the government would have done in that case. Your Honor, the government would, in this instance, the government would have, Your Honor, the government would oppose it, because again, there is a final order of removal in this instance that it is going to uphold in this instance and it's going to seek to try and uphold and execute as it is doing in this instance. All right, the point is this, you have a number of jurisdictional and technical arguments. They may be right, perhaps they are, perhaps they aren't. But the point is, it seems like a simple, fair solution just to take them to Canada if indeed Canada is willing to take them. And that's why we're asking these questions. And so I would encourage you to go back to your supervisors and see whether you can't work this out. In the meantime, the court will reserve decision. And we'll move on. Your Honor. Yes? I apologize, on behalf of the petitioner, I don't know if I have any time, but there was just two minor points. No, no, no, no. On motions, we don't do a rebuttal and this has already gone beyond the time allotted. So thank you.  We'll reserve decision. We'll move on.